UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA S. C.,<br><br>                              Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                              Defendant. | Case No.:  24-cv-84-CAB-DDL<br><br>**REPORT AND RECOMMENDATION FOR ORDER AFFIRMING COMMISSIONER'S DECISION AND ENTERING JUDGMENT IN COMMISSIONER'S FAVOR** |

The undersigned respectfully submits this Report and Recommendation to United States District Judge Cathy Ann Bencivengo pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1.c.  Plaintiff Christina S. C. appeals the Commissioner's denial of her application for disability benefits pursuant to 42 U.S.C. § 405(g) and requests remand to the Social Security Administration for further proceedings.  *See* Plaintiff's Opening Brief ("Op. Br."), Dkt. No. 12.  For the reasons stated below, the Court **RECOMMENDS** the District Judge **AFFIRM** the Commissioner's decision.

## I.

## BACKGROUND

**A. Plaintiff's Application for Disability Benefits**

On January 5, 2021, Plaintiff applied for disability insurance benefits under Title II of the Social Security Act ("Act") and for supplemental security income

1    under Title XVI of the Act.  *See* Certified Administrative Record ("AR") [Dkt. No.

2    9] at 73-75.[1]  Plaintiff alleged she had been unable to work since June 16, 2019 due

3    to various mental and physical impairments.  *Id*.  After her application was denied

4    at the initial stage and upon reconsideration, Plaintiff requested a hearing before

5    an administrative law judge ("ALJ"), which took place on January 18, 2023 before

6    ALJ Kim Field.  *Id*. at 50-72.  Plaintiff appeared with counsel and gave testimony.

7    *Id*.  The ALJ issued an unfavorable decision on February 1, 2023, having concluded

8    Plaintiff "has not been under a disability, as defined in [the Act], from June 16,

9    2019, through the date of [the] decision."  *Id*. at 30, 41.  On November 21, 2023, the

10   Appeals Council denied review, and the ALJ's decision became final.  *See id*. at 1-

11   3.  This appeal timely followed.

12   **B. Summary of ALJ's Findings**

13          A person is considered "disabled" within the meaning of the Act if they

14   suffer from a medically determinable physical or mental impairment which is

15   expected to last at least a year and is of such severity that they cannot work,

16   considering their age, education, and work experience.  *See* 42 U.S.C. § 423(d).  The

17   ALJ followed the sequential five-step evaluation set forth in the regulations in

18   adjudicating Plaintiff's disability claim.[2]  *See generally* AR at 29-42.

19

20

21   [1]      The Court uses the parties' pagination of the AR.  All other docket citations

22   are to the CM/ECF page numbers.

23   [2]      The five-step sequential evaluation is the same for both disability insurance

24   benefits and supplemental security income.  *See* 20 C.F.R. § 404.1520; *id*. § 416.920.

25   The ALJ must determine the following: at step one, whether the claimant is

26   engaged in substantial gainful activity; at step two, whether the claimant suffers

27   from a severe impairment within the meaning of the regulations; at step three,

28   whether the impairment meets or is medically equal to an impairment identified

     in the Listing of Impairments; at step four, the claimant's residual functional

     capacity ("RFC") based on all impairments and whether the claimant can perform

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity after August 3, 2019.  *Id*. at 31.  Although Plaintiff alleged a disability onset date of June 16, 2019, the record demonstrated she worked full-time work through August 3, 2019 and that her earnings which met the threshold for substantial gainful activity.[3]  *Id.* at 32.

At step two, the ALJ found Plaintiff had the following severe impairments: depression and anxiety.[4]  *Id*.

At step three, the ALJ found Plaintiff's impairments did not meet or medically equal a listed impairment.  *Id*. at 33-34.  In making this finding, the ALJ assessed Plaintiff's functioning in the four "Paragraph B" categories.[5]  Based on the evidence in the record, the ALJ determined Plaintiff had a moderate limitation in understanding, remembering or applying information; a moderate limitation in

---

their past relevant work; at step five, whether the claimant can make an adjustment to other work.  If the claimant is found not disabled at any step, the analysis does not proceed to the next step.

[3]    Plaintiff also worked at McDonald's in 2022 (during her period of alleged disability), but her earnings were "not at the substantial gainful activity level."  *Id.* at 32.

[4]    The ALJ found Plaintiff's alleged physical impairments (high blood pressure, brain aneurysm, sleep apnea, knee and leg "problems," congestive heart failure, sleep apnea and "bladder issues") were not severe.  AR at 32.  Plaintiff does not challenge these findings.

[5]    In addition to the five-step sequential evaluation, where a claimant alleges a mental impairment, the ALJ must also rate the claimant's degree of limitation in four functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), using a five-point scale (none, mild, moderate, marked, and extreme).  *See* 20 C.F.R. § 404.1520a; *id*. at § 416.920a.  This analysis is interchangeably referred to as the "Paragraph B" analysis, the Psychiatric Review Technique, or the PRT.

24-cv-84-CAB-DDL

1  interacting with others; a moderate limitation in concentrating, persisting or
2  maintaining pace; and a moderate limitation in adapting or managing herself. *See*
3  AR at 33-34.  The ALJ concluded the Paragraph B criteria were not satisfied
4  because Plaintiff did not have at least two "marked" limitations or one "extreme"
5  limitation. *Id.* at 34.

6       Proceeding to step four, the ALJ determined Plaintiff could:

7       perform a full range of work at all exertional levels but with the
8       following nonexertional limitations: she is able to perform simple,
9       routine tasks and make simple work-related decisions[;] . . .
        occasionally interact with supervisors, coworkers and the public[;]
10      [and] . . . occasionally deal with changes in a work setting.
11

12  AR at 35.  The ALJ stated the foregoing RFC "reflect[ed] the degree of limitation
13  . . . found in the 'Paragraph B' mental function analysis." *Id*.

14       In addition to the Paragraph B results, the ALJ also considered Plaintiff's
15  subjective testimony regarding her limitations in formulating the RFC.  AR at 35-
16  39.  Having reviewed the medical records and Plaintiff's statements regarding her
17  daily activities, the ALJ found although Plaintiff's medically determinable
18  impairments could reasonably be expected to cause her alleged symptoms,
19  Plaintiff's allegations regarding the intensity, persistence and limiting effects of
20  her symptoms was "not entirely consistent with the medical evidence and other
21  evidence in the record." *Id.* at 36.

22       The ALJ also reviewed the medical opinions in the record.  AR at 37, 39.  The
23  ALJ found the opinions of two state agency psychological consultants were
24  partially persuasive. *Id*. at 39.  The ALJ found these opinions "well supported and
25  consistent with other evidence," and supported the RFC and the ultimate finding
26  that Plaintiff was not disabled; however, the ALJ also noted the record contained
27  evidence the consultants did not have available at the time of their respective
28  / / /

reviews. *Id.* The ALJ found the medical opinion of A. Morin, APRN[6] was not persuasive, as it was neither supported by objective findings nor consistent with other evidence in the record. *Id*. at 37. The ALJ also noted Morin's opinion "rel[ied] on complete acceptance of the claimant's allegations" as to the limiting effects of her impairments, which the ALJ had already discounted. *Id.*

At step four, the ALJ concluded Plaintiff was unable to perform any of her past relevant work as a nurse aide, fast food worker and hospital cleaner. AR at 40. At step five, the ALJ determined an individual of Plaintiff's age, education, work experience, and RFC would be able to perform jobs which exist in significant numbers in the national economy. *Id*. Accordingly, the ALJ concluded Plaintiff was "not disabled" within the meaning of the Act. *Id*. at 41.

## II.

## ISSUES PRESENTED

Plaintiff raises two issues on appeal:

1) Whether the ALJ erred by failing to reconcile her mental findings in the "B" criteria at steps two and three of the sequential evaluation process with the limitations she assessed in the RFC determination; and

2) Whether the ALJ's RFC determination is legally erroneous and unsupported by substantial evidence, because the ALJ failed to properly evaluate the opinion of treating source Amy Morin, APRN.

*See* Op. Br. at 9.

---

[6]    An Advanced Practice Registered Nurse is an acceptable medical source "for impairments within his or her licensed scope of practice." *See* 20 C.F.R. § 420.1502(a)(7); *id*. at § 416.902(a)(7). The Court assumes Morin's scope of practice is mental health, given her additional certification as a Psychiatric-Mental Health Nurse Practitioner ("PMHNP-BC"). *See* AR at 1053.

# III.

## STANDARD OF REVIEW

The Court's review of the Commissioner's final decision is "highly deferential." *Kitchen v. Kijakazi*, 82 F.4th 732, 738 (9th Cir. 2023).[7] The Court "will disturb the denial of benefits only if the decision contains legal error or is not supported by substantial evidence." *Id*. "Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and must be more than a mere scintilla, but may be less than a preponderance." *Id*. This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). The Court "may not reweigh the evidence or substitute [its] judgment for that of the ALJ." *Id*. Moreover, "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id*. If the evidence is susceptible of more than one rational interpretation, the ALJ's decision must be upheld. *See id*. at 1115-16. However, the Court cannot affirm "on a ground upon which [the ALJ] did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014). Where the ALJ commits legal error, the Court may affirm the decision if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

/ / /

---

[7] Unless otherwise noted, internal quotation marks, ellipses, brackets, citations, footnotes, and parallel reporter citations are omitted from citations.

# IV.

# DISCUSSION

## A. The ALJ's Residual Functional Capacity Determination Appropriately Reflects the Paragraph B Findings

As a first charge of reversible error, Plaintiff asserts the ALJ "fail[ed] to reconcile her mental findings in the [Paragraph] 'B' criteria . . . with the limitations she assessed in the RFC determination." Op. Br. at 10. Plaintiff further argues "the RFC adopted by the ALJ failed to properly account for the moderate limitations in maintaining concentration, persistence and pace, which the ALJ adopted in her P[sychiatric] R[eview] T[echnique] findings, and the failure to explain this discrepancy is error." *Id.* at 11. The Court disagrees.

A claimant's "residual functional capacity is the most [the claimant] can still do despite [their] limitations," and is assessed "based on all the relevant evidence in [the] record." 20 C.F.R. § 404.1545(a); *id.* § 416.945(a). The ALJ's task is to "translate" the claimant's limitations into "concrete restrictions." *Stubbs-Danielson v. Astrue*, 539 F. 3d 1169, 1174 (9th Cir. 2008). "Moderate limitations [in the Paragraph B categories] do not have to be exactly mirrored in the RFC determination." *Phillips v. Colvin*, 61 F. Supp. 3d 925, 939 (N.D. Cal. 2014). Instead, the Ninth Circuit holds that "an ALJ's assessment of a claimant adequately captures [those] restrictions . . . where the assessment is consistent with restrictions identified in the medical testimony." *Stubbs-Danielson*, 539 F.3d at 1174 (finding no error where ALJ limited claimant to "simple tasks" to accommodate limitations related to concentration, persistence or pace).

The medical testimony in the record amply supports the restrictions the ALJ incorporated into the RFC. *See Phillips*, 61 F. Supp. 3d at 940 ("The relevant inquiry is whether the medical evidence supports a particular RFC finding."). On initial review, state agency consultant M. Tashner, Ed.D., noted Plaintiff had "difficulties with memory, concentration" and "authority," and did not "handle stress or

change well," but could "follow written instructions" and was able to "manage" personal care, medications, chores, driving and shopping. *See* AR at 80. Dr. Tashner opined Plaintiff was "[c]apable of understanding instructions at least 2-3 steps," noting Plaintiff's abilities with regard to concentration, persistence and pace "varie[d] with motivation and interest, but capable of 1-2 steps." *Id*. Due to her "[d]ifficulties socially," Dr. Tashner further opined Plaintiff "would do better in low stress environment with limited social interactions." *Id*. On reconsideration review, state agency consultant M. Becker, Ph.D., concurred with these findings and recommendations. *Id*. at 99. Dr. Becker found the initial assessment "consistent with the objective evidence and supported by other information in the file," and found additional evidence submitted after the initial review "d[id] not change the previous decision," which remained "appropriate and supported by" the medical evidence in the record. *Id*.

The ALJ's RFC limited Plaintiff to "simple, routine tasks" and making "simple work-related decisions." AR at 35. Plaintiff was also limited to only occasional contact with the public, coworkers and supervisors, and only occasional changes in her work setting. *See id.* These limitations appropriately "track" the consultants' testimony. *See Kitchen*, 82 F.4th at 740. Plaintiff has not persuaded the Court that the ALJ's Paragraph B findings "were not adopted into – or adequately accommodated by – the RFC she adopted." Op. Br. at 12. As in *Stubbs-Danielson*, the ALJ incorporated "the only concrete restrictions available." *Stubbs-Danielson*, 539 F.3d at 1174.[8] Plaintiff complains of an "inconsistency"

---

[8]    *See also Knealy P. v. Kijakazi*, No. 20-CV-0984-AJB-BGS, 2022 WL 563237, at *25 (S.D. Cal. Feb. 24, 2022), *report and recommendation adopted*, 2022 WL 827119 (S.D. Cal. Mar. 18, 2022) (noting *Stubbs-Danielson* "makes clear the ALJ is permitted to translate a claimant's limitations in concentration, persistence, or pace into functional restrictions [in] the claimant's RFC" and "also provides an example of

between the Paragraph B findings and the RFC but has not identified any other concrete limitations recommended by any other medical source, nor has she cited any other information in the record which supports different or further work restrictions to accommodate her moderate mental limitations.  *See Israel v. Astrue*, 494 F. App'x 794, 796 (9th Cir. 2012) (unpublished) ("reject[ing]" identical argument that ALJ "disregarded his step-3 findings about moderate limitations" where ALJ relied on medical testimony and claimant had "not shown" the ALJ "failed to consider all of the evidence in the record"); *see also Sandra S. v. Kijakazi*, No. 21CV1248-AJB-MDD, 2022 WL 3355803, at *6 (S.D. Cal. Aug. 12, 2022), *report and recommendation adopted*, 2022 WL 4180973 (S.D. Cal. Sept. 12, 2022) (recommending affirmance where, "[l]ike in *Stubbs-Danielson*," the ALJ "appropriately translated Plaintiff's limitations with concentration and pace into . . . the restrictions articulated by the State agency psychological consultants").

For the foregoing reasons, the Court finds Plaintiff has not established harmful error with respect to whether the RFC sufficiently reflects the ALJ's finding that Plaintiff had moderate limitations in concentration, persistence and maintaining pace.

## B. The ALJ Properly Assessed APRN Morin's Opinion

As a second charge of reversible error, Plaintiff asserts the ALJ's assessment of Morin's opinion was "cursory and conclusory" and therefore "legally insufficient."  Op. Br. at 16.  Plaintiff further contends the ALJ's "failure to provide the requisite explanation robs both Plaintiff and the reviewing Court of the ability to ascertain the foundation" for her rejection of the opinion.  *See id.*  Again, the Court disagrees.

---

medical testimony that is adequate to support RFC restrictions — an opinion that identifies the concentration, persistence, and pace limitations and . . . provides the restrictions that are ultimately included in the hypothetical or RFC").

It is well established in this Circuit that the ALJ "need not take every medical opinion at face value." *Cross v. O'Malley*, 89 F.4th 1211, 1213 (9th Cir. 2024). "Rather, the ALJ must scrutinize the various – often conflicting – medical opinions to determine how much weight to afford each opinion." *Id.* at 1213-14. The "most important factors" the ALJ must consider in doing so are supportability and consistency. 20 C.F.R. § 404.1520c(a); *id.* § 416.920c(a). "Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (citing 20 C.F.R. § 404.1520c(c)(1)). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (citing 20 C.F.R. § 404.1520c(c)(2)). In assessing a medical opinion's persuasive value, the "ALJ need only provide an explanation supported by substantial evidence." *Kitchen*, 82 F.4th at 740.

The medical opinion at issue is a three-page check-the-box form titled "Mental Capacity Assessment" signed by Morin on February 9, 2021. AR at 1051-53. Morin assessed Plaintiff as having "mild" limitations in all areas of understanding, remembering and applying information; "mild," "moderate," or "marked" limitations in areas concerning concentration, persistence, and maintaining pace; "moderate" or "marked" limitations in areas concerning adapting or managing oneself; and "marked" limitations in all areas concerning interacting with others. *See id.* The form instructs the opinion writer their assessments must be "based on [their] examination" of the claimant, and although the form prompts the provider to "describe the . . . findings that support [their] assessment[s]," Morin did not do so. *See id.*

The ALJ "was unable to attribute much persuasiveness to [Morin's] opinion." AR at 37-38. First, the ALJ found the  opinion was not supported by signs and findings consistent with the degree of limitation alleged. *Id.* at 37. The

governing regulations provide "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion[,]the more persuasive the medical opinion[]will be." 20 C.F.R. § 404.1520c(c)(1); *id.* § 416.920c(c)(1).  Here, however, Morin did not cite any clinical findings, test results or other objective medical evidence in support of her opinion.  AR at 1501-03.  Because Morin's opinion is "wholly unexplained" by any reference to medical evidence, the ALJ "reasonably rejected" it. *Woods*, 32 F.4th at 793; *see also Kitchen*, 82 F.4th at 740-41 ("we have accepted the discounting of a medical opinion set forth in a checkbox form with little to no explanation"); *Ford v. Saul*, 950 F.3d 1141, 1155 (9th Cir. 2020) (the ALJ "may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions").

Second, the ALJ found Morin's opinion was inconsistent with her own treatment record, citing mental health progress notes from Morin and others in her practice group.  AR at 37.  The ALJ specifically identified Morin's progress notes dated December 2020 and January 2021 (*i.e.*, shortly before issuing her opinion), which documented Plaintiff's "pleasant and cooperative" demeanor and statement she  "ha[d] friends she could rely on."  AR at 37 (citing *id.* at 1020-1049).  This evidence undermined Morin's opinion that Plaintiff was "greatly functionally limited," especially in the areas of interacting with others, managing herself, and "sustaining an ordinary routine and regular attendance at work."  *Id*.  A medical opinion is properly found unpersuasive where the provider assesses limitations that are "contradicted [by] his own treatment records."  *Stiffler v. O'Malley*, 102 F.4th 1102, 1107 (9th Cir. 2024); *see also Jeanette R. v. Kijakazi*, 620 F. Supp. 3d 1127, 1143 (E.D. Wash. 2022) (noting the ALJ "is not obliged to credit medical opinions that are unsupported by the medical source's own data . . .").

Third, the ALJ found Morin's opinion relied "on complete acceptance" of Plaintiff's subjective allegations regarding her limitations, AR at 37, which the ALJ had determined were not supported by the record.  *See id*. at 36 (finding the record

"fail[ed] to support allegations of a debilitating . . . impairment" because the objective medical evidence "indicate[d] at best, ailments that appear troublesome, but do not impose limitations of such significance as to preclude sustained competitive employment").  The ALJ could reasonably discount Morin's opinion for its overreliance on Plaintiff's self-reported limitations, having found those allegations unsupported.  *See, e.g.*, *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1223 (9th Cir. 2010) (finding no error where ALJ rejected opinion "based almost entirely on the claimant's self-reporting"); *Evenhus v. Astrue*, 815 F. Supp. 2d 1154, 1160 (D. Or. 2011) ("A physician's disability opinion may be disregarded if it is premised upon the claimant's subjective symptoms and limitations that were properly discredited.").

Fourth, the ALJ found Morin's opinion was inconsistent with other evidence in the record, including "inconsistencies" in the evidence Morin "[did] not appear to have been aware of."  AR at 38.  This statement is followed by a lengthy description of the evidence the ALJ found inconsistent with both Morin's opinion and Plaintiff's subjective assessment of her limitations.  *See id*. at 38-39.  The ALJ cited progress notes from the several-month period after Morin issued her opinion documenting largely "normal" findings on mental status examinations.  *Id*. at 38-39 (citing *id*. at 1085, 1090, 1138-40, 1147, 1178-82, 1908, 1912, 1919).  Although Plaintiff was "tearful" or "agitated" during some visits, she was largely noted to be alert, oriented, and cooperative, with no disturbances in sleep or appetite.  *Id*. (citing *id*. at 1085, 1138-40, 1178-82, 1908).  Plaintiff was able to travel and engage in activities of daily living.  *Id*. (citing *id*. at 1085, 1090, 1912).  The ALJ also cited indications in the record that Plaintiff's mental symptoms abated with medication "when used appropriately."  *Id*. (citing *id*. at 1090, 1908, 1919).  *See Warre v. Comm'r*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purposes of determining eligibility for [disability] benefits.").

In sum, the ALJ found Morin's opinions regarding Plaintiff's limitations were not persuasive because they were not "consistent with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). The ALJ's discussion of the "inconsistencies" undermining Morin's opinion is thorough and detailed. Although that discussion is somewhat intertwined with the ALJ's analysis of Plaintiff's subjective testimony, given Morin's reliance on Plaintiff's self-reported limitations, this does not obscure the ALJ's reasoning. Despite Plaintiff's protestations that the ALJ "rob[bed] . . . the Court of the ability to ascertain the foundation for" rejecting Morin's opinion, Op. Br. at 19, the Court finds the ALJ's reasoning both clear and legally sound. *See Stiffler*, 102 F.4th at 1107 (finding ALJ did not err in rejecting "extreme limitations" contradicted by the record).

For the foregoing reasons, the Court finds Plaintiff has not established harmful error with respect to the ALJ's evaluation of Morin's medical opinion.

## C.    Substantial Evidence Supports the ALJ's Conclusions

Having found the ALJ's evaluation of Plaintiff's subjective testimony is free of harmful error, the Court turns to the question of whether the ALJ's conclusion is supported by substantial evidence. The Court has independently "assess[ed] the entire record, weighing the evidence both supporting and detracting from the [ALJ's] conclusion." *See Ahearn*, 988 F.3d at 1115. Based on this review, the Court finds substantial evidence supports the ALJ's decision, as summarized below.

Plaintiff's treatment records dated between 2018 and 2022 confirm Plaintiff's diagnoses of recurrent depression and generalized anxiety disorder, with associated symptoms including sadness, hopelessness, low self-esteem and agitation. AR at 981, 993, 996, 1013, 1038, 1154, 1173, 1908. Notwithstanding Plaintiff's sad, anxious or tearful presentation at several visits, however, mental status examinations were largely normal during this period, including findings regarding memory, judgment, insight and concentration. *See, e.g., id.* at 645, 669,

983, 999, 1018, 1024, 1031, 1036, 1047, 1082, 1139, 1162, 1182, 1933.  By both subjective report and provider observation, Plaintiff's symptoms improved with medication and therapy.  *Id*. at 744, 984, 989, 1016, 1090, 1162, 1911-12, 1937. Results of an October 2022 neurology consult for Plaintiff's complaints of memory loss demonstrated "no obvious genitive deficits."  *Id*. at 1917-1921.

Plaintiff was hospitalized for suicidal ideation on March 3, 2020 after having voluntarily discontinued all her medications.  *Id*. at 588-93.  She was discharged three days later, on March 6, 2020, after resuming her medications (or starting new ones) and reporting a "significant improvement in mood and resolution of [her] suicidal ideation."  *Id*. at 609-12; *see also id*. at 1018 (progress note dated March 9, 2020 indicating Plaintiff "state[d] the medications that she was started on at the hospital appeared to be helping her").

On initial review, state agency consultant Dr. Tashner noted Plaintiff had been diagnosed with adjustment disorder with mixed anxiety and depression as early as 2018.  AR at 80.  Plaintiff's treatment records reflected "intact" mental status examinations, with "grossly intact" memory, concentration, and attention, and Dr. Tashner noted Plaintiff improved with therapy and medication.  *Id*.  Dr. Tashner assessed Plaintiff as capable of understanding simple instructions, and recommended she work in a low-stress environment with limited social interactions.  *Id*.  Dr. Tashner also identified a "TSS" completed by Plaintiff's ARNP who "cited significant difficulties not supported by objective evidence," specifically noting the provider had seen Plaintiff and had "not documented" the "significant" issues reported in the TSS.[9]  *Id*.  On reconsideration review, state

---

[9]    The Court understands "TSS" refers to a trauma symptom scale (or trauma symptom checklist), a questionnaire to identify potential symptoms of trauma and its effect on a patient's daily functioning.  The Court further understands Dr. Tashner's reference here is to Morin's "Mental Capacity Assessment."

agency consultant Dr. Becker noted Plaintiff "had returned for more treatment for her mental condition and [was] receiving therapy" since the initial review.  *Id*. at 99.  Dr. Becker concluded the additional, more recent medical records did not change Dr. Tashner's initial assessment and recommendations, which remained consistent with the objective medical evidence.  *Id*.

The Court finds the foregoing is substantial evidence to support the ALJ's RFC, the conclusion that Morin's opinion was not persuasive, and the determination that Plaintiff was not disabled.

## V.

## CONCLUSION

For the foregoing reasons, the Court concludes the ALJ's decision is free of legal error and supported by substantial evidence in the record.  The undersigned accordingly **RECOMMENDS** that the District Judge issue an order: (1) approving and adopting this Report and Recommendation in its entirety; (2) affirming the decision of the Commissioner; and (3) directing that judgment be entered in the Commissioner's favor.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed by not later than **December 16, 2024**.  Any response to a party's objections must be filed by not later than **December 23, 2024**. Failure to timely file objections may waive the right to raise those objections on appeal.  *See Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

**IT IS SO ORDERED.**

Dated: December 2, 2024

_____
Hon. David D. Leshner
United States Magistrate Judge